## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IBTIHAJ ARSHAD, <br><br> Plaintiff, <br><br> v. <br><br><br> SPRING BANK PHARMACEUTICALS, INC., DAVID ARKOWITZ, TODD BRADY, TIMOTHY CLACKSON, MARTIN DRISCOLL, KURT M. EICHLER, PAMELA KLEIN, and SCOTT SMITH, <br><br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Ibtihaj Arshad ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Spring Bank Pharmaceuticals, Inc. ("Spring Bank" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Spring Bank and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Spring Bank and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with F-star Therapeutics Limited ("F-star") (the "Proposed Transaction").

2.      On July 29, 2020, the Company entered into an share exchange agreement (the "Exchange Agreement") with F-star.  Pursuant to the terms of the Exchange Agreement, Spring Bank will acquire: (i) the issued capital of F-star; and (ii) each ordinary share of F-star in exchange for shares of Spring Bank common stock.  Following close of the Proposed Transaction, F-star holders are expected to own approximately 61.2% of the outstanding capital stock of the combined company.

3.      On August 28, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Spring Bank and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Spring Bank shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Spring Bank shares.

9.      Defendant Spring Bank is incorporated under the laws of Delaware and has its principal executive offices located at 35 Parkwood Drive, Suite 210, Hopkinton, Massachusetts 01748.  The Company's common stock trades on the NASDAQ under the symbol "SBPH."

10.     Defendant David Arkowitz ("Arkowitz") is and has been a director of Spring Bank at all times during the relevant time period.

11.     Defendant Todd Brady ("Brady") is and has been a director of Spring Bank at all times during the relevant time period.

12.     Defendant Timothy Clackson ("Clackson") is and has been a director of Spring Bank at all times during the relevant time period.

13.     Defendant Martin Driscoll ("Driscoll") is and has been the President, Chief Executive Officer, and a director of Spring Bank at all times during the relevant time period.

14.     Defendant Kurt M. Eichler ("Eichler") is and has been a director of Spring Bank at all times during the relevant time period.

15.     Defendant Pamela Klein ("Klein") is and has been a director of Spring Bank at all times during the relevant time period.

16.     Defendant Scott Smith ("Smith") is and has been the Chairman of the Board of Spring Bank at all times during the relevant time period.

17.     Defendants Arkowitz, Brady, Clackson, Driscoll, Eichler, Klein, and Smith are collectively referred to herein as the "Individual Defendants."

18.     The Individual Defendants, along with Defendant Spring Bank, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.     Spring Bank is a clinical-stage biopharmaceutical company engaged in the discovery and development of novel therapeutics for the treatment of a range of cancers and inflammatory diseases using its proprietary small molecule nucleotide platform. The Company designs its compounds to selectively target and modulate the activity of specific proteins implicated in various disease states. Spring Bank's internally-developed programs are primarily designed to stimulate and/or dampen immune responses to achieve a desired therapeutic effect.

20.    Spring Bank is devoting its resources to advancing multiple programs in its STING (STimulator of INterferon Genes) product portfolio, including its STING agonist clinical program in oncology, its STING antagonist compounds for inflammatory diseases, and its STING agonist antibody drug conjugate ("ADC"), program for oncology.

## The Company Announces the Proposed Transaction

21.    On July 29, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> HOPKINTON, Mass. and CAMBRIDGE, United Kingdom and CAMBRIDGE, Mass., July 29, 2020 (GLOBE NEWSWIRE) -- Spring Bank Pharmaceuticals, Inc. (Nasdaq: SBPH) ("Spring Bank"), a clinical-stage biopharmaceutical company developing novel therapeutics for oncology and inflammatory diseases, and F-star Therapeutics, Limited ("F-star"), a privately-held clinical-stage biopharmaceutical company focused on transforming the lives of patients with cancer through the development of innovative tetravalent bispecific (mAb$^{2}$™) antibodies, today announced that the companies have entered into a definitive share exchange agreement pursuant to which Spring Bank will, subject to stockholder approval, acquire all of the outstanding share capital of F-star in exchange for newly issued shares of Spring Bank in an all-stock transaction. The combined company, operating under the name F-star Therapeutics, Inc., will advance its immuno-oncology pipeline of multiple tetravalent bispecific antibody programs, as well as Spring Bank's STING (STimulator of INterferon Gene) agonist, SB 11285, currently in a Phase 1/2 clinical trial.
>
> **Martin Driscoll, President and CEO of Spring Bank, said:** *"After an extensive and thorough review of Spring Bank's strategic options following the termination of our Phase 2b Hepatitis B development program earlier this year, we are thrilled to announce a proposed combination with F-star Therapeutics. We believe the combined company's strong portfolio of multiple clinical-stage immuno-oncology therapeutic programs, near-term milestones, and accomplished oncology development leadership team offer an excellent opportunity to benefit cancer patients, as well as provide the potential for future value creation for Spring Bank stockholders. The F-star leadership team has committed to continuing the ongoing clinical trial of SB 11285, an IV-administered STING agonist, as part of its expansive immuno-oncology clinical pipeline.*
>
> *"This transaction offers the Spring Bank stockholders of record as of immediately prior to the close of the combination potential future additional value in the form of two contingent value rights ("CVRs") related to our STING agonist and*

*STING antagonist programs. The first CVR represents the right to receive a potential future cash payment of at least $1.00 per share (on a pre-reverse split basis) if the combined company consummates one or more strategic transactions for SB 11285 aggregating at least approximately $18.0 million within a certain period following the closing. The second CVR gives Spring Bank stockholders the right to receive 80% of the net proceeds from a potential development agreement and from one or more strategic transactions related to the STING antagonist research program that are consummated within a certain period following the closing of the combination."*

**Eliot Forster, CEO of F-star, said:** *"We are truly excited about the opportunity created by this proposed combination to further advance our pipeline of novel tetravalent bispecific antibodies, which we believe will be able to address the limitations of current therapies in the field of immuno-oncology. At F-star, we are pioneering a differentiated approach to bispecifics, using a natural human IgG1 antibody format that has already shown early signs of clinical activity, established manufacturing processes and promising safety.*

*"Currently, only a minority of patients realize long-lasting benefit from immunotherapy, so there remains a significant unmet medical need to develop more effective cancer treatment options. We believe this transaction will provide the resources to accelerate F-star's clinical development and generate stockholder value through a pipeline of novel therapies with the potential to improve the lives of patients with difficult to treat cancers."*

By developing medicines that seek to block tumor immune evasion, F-star's goal is to offer patients greater and more durable benefits than current immuno-oncology treatments. Through its proprietary tetravalent, bispecific antibody (mAb²) format, F-star's mission is to generate highly differentiated, best-in-class drug candidates with monoclonal antibody-like manufacturability.

The combined company's pipeline will include:

- FS118, a LAG-3/PD-L1-targeting tetravalent bispecific antibody, currently in Phase 1 development
- FS120, a Phase 1-ready dual T cell agonist tetravalent bispecific antibody targeting OX40 and CD137
- FS222, a conditional agonist targeting CD137 and PD-L1 expected to enter first in human trials in the first quarter of 2021
- SB 11285, a novel IV-administered STING agonist, currently in a Phase 1/2 clinical trial for the treatment of solid tumors
- Additional research programs from the F-star differentiated bispecific technology platform and the potential further development of Spring Bank's STING agonist antibody drug conjugates ("ADCs")

The combined company plans to advance its pipeline through multiple clinical trials, including the following anticipated near-term milestones that offer significant potential value creation for Spring Bank's stockholders:

- Report Phase 1 results from the FS118 program (2020 Q4)
- Update on SB 11285 monotherapy cohorts (2020 Q4)
- Update on accelerated dose titration from the FS120 Phase 1 trial (2021 Q2)
- Initial read out from the SB 11285-atezolizumab combination cohort (2021 H1)
- Initiation of PK/PD expansion cohorts in the FS222 Phase 1 trial (2021 Q4)
- Update on FS118 Phase 2 proof of concept trial (2022 Q1)
- Initiation of FS120 PD-1 combination trial (2022 Q2)
- Update on dose escalation in FS222 Phase 1 (2022 Q2)
- Report FS118 Phase 2 proof of concept readout (2022 Q4)
- Report initiation of tumor specific expansion cohorts in FS222 Phase 1 (2022 Q4)

F-star anticipates raising additional capital at the closing of the proposed combination from current and potential new investors and the combined company expects to have at least $40 million in cash prior to closing. This financing will help fund the further development of the combined company's preclinical and clinical immuno-oncology programs, and the combined company expects to have multiple opportunities to raise non-dilutive capital from existing and future business development collaborations over the next two to three years.

**About the Proposed Combination**

Pursuant to the share exchange agreement, Spring Bank will acquire all of the outstanding share capital of F-star in exchange for the issuance of newly issued shares of Spring Bank common stock upon closing, subject to the satisfaction or waiver of customary closing conditions, including the receipt of the required approval of the Spring Bank stockholders. On a pro forma basis and assuming that the proceeds of the concurrent F-star financing will be $25 million, current Spring Bank equity holders and F-star equity holders will own approximately 38.8% and 61.2%, respectively, of the combined company calculated on a fully diluted basis using the treasury stock method and, in the case of Spring Bank, excluding out-of-the-money options and warrants. The actual ownership allocation will be subject to adjustment based on Spring Bank's net cash balance at the closing of the transaction, the actual amount raised in the F-star financing and certain other terms set forth in the share exchange agreement. Prior to closing, Spring Bank will seek stockholder approval to effect a reverse stock split of its outstanding common stock so that the combined company satisfies the continued listing requirements of the Nasdaq Capital Market.

In addition to retaining equity ownership of the combined company, Spring Bank stockholders of record as of the close of the combination will have the opportunity to obtain potential future value in the form of two CVRs associated with Spring Bank's ongoing Spring Bank SB 11285 IV clinical program and

Spring Bank's STING antagonist research platform. Subject to the terms of the first CVR agreement for the STING agonist clinical program, if one or more strategic transactions are consummated for SB 11285 by the combined company during a period that is the longer of one and a half years following the closing of the combination or one year after the final database lock of the current SB 11285 IV Phase 1a/1b trial, those equity holders of Spring Bank will receive the greater of 25% of the net proceeds from such transactions or $1.00 per share (on a pre-reverse split basis), provided that the aggregate net proceeds are at least approximately $18.0 million. Subject to the terms of the second CVR agreement, if a potential development agreement is consummated and one or more strategic transactions are consummated for the STING antagonist research platform by the combined company during the seven (7)-year period following the closing of the combination, those equity holders of Spring Bank will receive 80% of the net proceeds from such transactions. If Spring Bank enters into a development agreement for the STING antagonist research platform in advance of the closing of the proposed combination, Spring Bank may include certain proceeds from such transaction in its net cash calculation.

The Spring Bank directors and officers have signed support agreements committing them to vote in favor of the transaction. These same parties, as well F-star's key equity holders, directors and officers, have signed lock-up agreements restricting transfers of the combined company's stock (except as to any shares purchased by such holders in the financing closing immediately prior to the business combination) for 180 days post-closing.

The transaction has been approved by the boards of directors of both companies and the equity holders of F-star, who have signed the share exchange agreement. The combined company will be headquartered out of F-star's existing facilities in Cambridge, U.K. and Cambridge, MA. Following closing, which is expected to occur in late 2020, Spring Bank will be re-named F-star Therapeutics, Inc. and is expected to trade on the Nasdaq Capital Market under the ticker symbol "FSTX".

Ladenburg Thalmann & Co. Inc. is acting as exclusive financial advisor and Lowenstein Sandler is serving as legal counsel to Spring Bank. Mintz Levin and Mills & Reeve are serving as legal counsel to F-star.

**Management and Organization**

Effective as of the closing of the transaction, Eliot Forster, Ph.D., MBA, will be the President and Chief Executive Officer of the combined company. Senior members of the current F-star and Spring Bank teams will be asked to become a part of the key leadership team of the combined company. Martin Driscoll, President and Chief Executive Officer of Spring Bank, will not be a member of the leadership team of the combined company.

Effective with the closing of the combination, the board of directors of the combined company will initially consist of eight directors. Of the current Spring Bank board, David Arkowitz MBA, Todd Brady, M.D., Ph.D. and Pamela Klein, M.D., will continue as members of the combined company's board of directors.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

22.     On August 28, 2020, the Company authorized the filing of the Registration Statement with the SEC.  The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding the Company's Financial Projections

24.     The Registration Statement omits the projections prepared by the Company's and F-star's management concerning the Proposed Transaction.

25.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information allow shareholders a basis to predict the future financial performance of the Company and would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding Ladenburg's Financial Opinion**

26.     The Registration Statement contains the financial analyses and opinion of Ladenburg Thalmann & Co. Inc. ("Ladenburg") concerning the Proposed Transaction, but fails to provide material information concerning such.

27.     With respect to Ladenburg's *Implied Equity Value* for F-Star of approximately $60 million, the Registration Statement fails to disclose how Ladenburg calculated the implied purchase price per share of F-Star common stock.

28.     With respect to Ladenburg's *Analysis of Selected Initial Public Offering Transactions*, the Registration Statement fails to disclose the basis for each of the companies selected for the analysis.

29.     With respect to Ladenburg's *Analysis of Selected Precedent M&A Transactions*, the Registration Statement must disclose the basis for each of the transactions selected for the analysis.

30.     Lastly, the Registration Statement fails to provide any financial analyses conducted on the Company and omits what, if any, were created.

31.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

32.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

33.     The Registration Statement omits material information relating to the sales process leading up to the Proposed Transaction.

34.     Specifically, the Registration Statement fails to disclose: (i) whether any of the confidentiality agreements entered into by Spring Bank prior to the Special Committee's engagement of Ladenburg contained standstill and/or "don't ask, don't waive" provisions; and (ii) the terms and values of the indications of interest submitted "by early May 2020."

35.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41.     The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

44.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

47.     The Individual Defendants acted as controlling persons of Spring Bank within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

officers and/or directors of Spring Bank, and participation in and/or awareness of the Company's

operations and/or intimate knowledge of the incomplete and misleading statements contained in

the Registration Statement filed with the SEC, they had the power to influence and control and

did influence and control, directly or indirectly, the decision making of the Company, including

the content and dissemination of the various statements that Plaintiff contends are materially

incomplete and misleading.

48.     Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading

prior to and/or shortly after these statements were issued and had the ability to prevent the

issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have

had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The Registration Statement at issue contains

the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly involved in preparing this document.

50.     In addition, as set forth in the Registration Statement sets forth at length and

described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

<strong>JURY DEMAND</strong>

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 18, 2020                                    Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*